**United States District Court  for the District of New Hampshire**
Name: Kurt D. Sanborn
Prison Number: 04230-049
Place of Confinement: FCI Allenwood Low, P.O. Box 1000, White Deer, Pa  17887
Case Number: 1:08-CR-00128-PB-1


United States
v.
Kurt D. Sanborn

**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
BY A PERSON IN FEDERAL CUSTODY**

1.  Name and location of court which entered the judgment of conviction under
    attack: United States District Court for the District of New Hampshire, 50
    Pleasant St., Concord, NH. 03301

2.  Date of Judgment of conviction: Pled guilty on: 11/12/2008 (acceptance deferred
    until sentencing); sentenced on: 11/23/2009 .

3.  Length of Sentence: 30 months to serve, 3 years supervised release

4.  Nature of offense involved: 18:1343 Wire Fraud

5.  Plea: Guilty

6.  Kind of trial: N/A

7.  Did you testify at trial?  N/A

8.  Did you appeal from the judgment of conviction?  N/A

9.  If you did appeal, answer the following:

        (a)  name of court: N/A
        (b)  Result: N/A
        (c)  Date of result: N/A


10. Other petitions, applications or motions with respect to this judgment: Yes.
    *Motion to Reconsider* filed on 12/2/2009.

11. If the answer to 10 is yes, give the following:

1

(a) Name of Court: Federal District Court for the District of New Hampshire
(b) Filed on: 12/2/2009
(c) Docket number: criminal docket number
(d) Grounds: Attorney failed to inform the court that he had restitution money
(e) Hearing: A hearing was held
(f) Result: Denied
(g) Date of result: 12/16/2009
(h) This motion was not appealed.  Defendant was advised to include this issue in his *Motion to Vacate, Set Aside, or Correct a Sentence*.

12. State concisely every ground on which you claim that you are being held unlawfully.

   A. <u>Ground One</u>: *Sixth Amendment/Ineffective Assistance of Counsel.*  Defense counsel failed to familiarize himself with the case and therefore could not render competent advice as to whether Mr. Sanborn should plead guilty or not.

   **Supporting Facts**:

   1. Attorney Baum didn't even request discovery from the U.S. Attorney's office until months after Mr. Sanborn was sentenced.

   2. Attorney Baum advised Mr. Sanborn to sign a plea agreement with a clause that states "The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C §522a."

   3. If Attorney Baum had requested discovery before advising his client to plead guilty, he would have known that there were copies of checks and erroneous spreadsheets, but no bank statements. There were no police reports, no investigative statements, and no witness statements in the U.S. Attorney's file.  There was not enough evidence to survive a motion for a directed verdict if this case had gone to trial.

   4. According to Mr. Sanborn's plea agreement, he faxed copies of fraudulent checks to the lawyer (Andrew Prolman) hired by the alleged victim Drew Weber. There is an email dated 2/17/2004 between Andrew Prolman and Attorney Andrea Batchelder in which Prolman

2

writes "Kurt provided me with copies of 4 checks to the payees and in the amounts listed below.  The checks are endorsed (by a stamp) for each separate company and appear to be deposited in their respective banks." There are also copies of cancelled checks in the investigative file. If anyone had spoken to Prolman, he would have told them that these checks were in fact cancelled checks and not fraudulent checks.

5.  Before writing out checks to contractors, Prolman's firm  sent emails to both Kurt Sanborn and Drew Weber. There are evidence of emails between Prolman and Sanborn and Weber.  These emails indicate that Weber approved expenditures before they were made.  If anyone had called Prolman, he would have told them Weber knew who was being paid and approved these expenditures.

6.  There is evidence of a civil case between Drew Weber and Andy Prolman's firm. Weber's attorney, Joseph Reinhardt contacted Postal Inspector William Richter. Reinhardt indicates there are two potential "witnesses," Andrea Batchelder and Richard O'Brien.  There is no evidence in the file that anyone spoke to Batchelder or O'Brien.

7.  Attorney Martha Van Oot represented Prolman's firm in the civil case against them by Drew Weber.  In a letter from Van Oot to Reinhardt dated June 29, 2007, Van Oot makes reference to a emails and a deposition of Weber. Van Oot wrote "Mr. Weber admitted in his deposition that he authorized PL&P to pay these vendors after review of the invoices." The transcript of this deposition is **not** in the criminal file.

8.  If anyone had spoken to Prolman, they would have discovered that Prolman never gave checks directly to Sanborn.   Instead, a man purporting to be Sanborn's uncle picked up checks.  Most likely, this man was Warren Griffin.

9.  The plea agreement indicates that Sanborn submitted counterfeit invoices from Derry Engineering. There was speculation that Derry Engineering was a fraudulent company created by Sanborn.  However, after Warren Grifffin died, Sanborn's mother, Judith Sanborn obtained a copy of Griffin's obituary.  This obituary indicated that Griffin was the owner of Derry Engineering.

10. If anyone had spoken to Prolman, they would have discovered that his firm reached a confidential settlement with Weber on the civil case.  If in fact, Weber received money from Prolman related to losses allegedly caused in part by Sanborn, this amount of money should have been deducted from Sanborn's restitution order.

**Direct Appeal**

1. This issue was not raised on direct appeal

2. There was no record to use in a direct appeal and most of the evidence obtained to support this ground was obtained after the appeal period had already lapsed.

**Post Conviction Proceedings** – There have been no prior post conviction proceedings on this ground.

B. <u>Ground Two</u>: *Ineffective Assistance of Counsel.* Defense counsel used misleading and coercive statements to convince Mr. Sanborn to plead guilty.

**Supporting Facts**

1. Attorney Baum told Mr. Sanborn that most likely, he would not go to prison if he pled guilty.

2. Attorney Baum told Mr. Sanborn that if he did not plead guilty, he would most likely serve twenty years in prison.

3. Although Mr. Sanborn's family had already paid $30,000 on what was supposed to be a fixed fee agreement, Attorney Baum told Mr. Sanborn's mother he would not take this case to trial unless she paid him $120,000.

**Direct Appeal**

1. This issue was not raised on direct appeal.

2. There was no record to use in a direct appeal.

**Post Conviction Proceedings** – There have been no prior post conviction proceedings on this ground.

C. <u>Ground Three</u>: *Sixth Amendment/Ineffective Assistance of Counsel.* Defense Counsel misled the Court during the sentencing hearing.

4

**Supporting Facts**

When asked whether Mr. Sanborn had restitution to offer to his alleged victims, Attorney Baum answered in the negative. This was not completely accurate. Mr. Sanborn had borrowed $20,000 towards restitution. This money was sitting in Attorney Baum's trust account. Right before the sentencing hearing, Attorney Baum approached Mr. Sanborn's mother.  He told her it would be an "insult" to offer $20,000 and convinced her to sign a paper allowing him to use this money for attorney's fees.[1]

**Direct Appeal**

1.   This issue was not raised on direct appeal.

2.   There was no record to use in a direct appeal.

**Post Conviction Proceedings** – Defendant filed a *Motion to Reconsider* after sentencing. There was a hearing on the motion and Defendant was advised to file a 2255 motion.


   D.   <u>Ground Four</u>: *Sixth Amendment/Prosecutorial Misconduct.* The United States Attorney's Office did not have enough evidence to convict Mr. Sanborn and should not have proceeded with the plea agreement.

**Supporting Facts**

Mr. Sanborn incorporates by reference the facts contained in Ground One.

**Direct Appeal**

1.   This issue was not raised on direct appeal.

2.   There was no record to use in a direct appeal and most of the evidence obtained to support this ground was obtained after the appeal period had already lapsed.

**Post Conviction Proceedings** – There have been no prior post conviction proceedings on this ground.

---

[1] Sanborn and his friends and family had actually given $30,000 for restitution to Attorney Baum. However, a check for $10,000 had  not cleared before the sentencing hearing.

E. <u>Ground Five</u>: *Sixth Amendment/Prosecutorial Misconduct.* After Mr. Sanborn was sentenced, the U.S. Attorney's Office received exculpatory information concerning Mr. Sanborn's innocence but did not bring it to the Court's attention.

**Supporting Facts**

Included in the discovery packet sent to Attorney Baum in March 2010, there is a cancelled check dated 8/14/03 to Kimball Chase for $54,000.47.[2] This cancelled check has a date stamp which indicates it was received by the U.S. Attorney's Office on January 25, 2010.

**Direct Appeal**

3. This issue was not raised on direct appeal.

4. There was no record to use in a direct appeal and the evidence obtained to support this ground was obtained after the appeal period had already lapsed.

**Post Conviction Proceedings** – There have been no prior post conviction proceedings on this ground.

13. Petition or appeal pending: None

14. Name and address of attorney who represented Defendant at waiver of arraignment, plea and sentencing:

Alan Baum
Law Offices of United Defense Group
4181 Sunswept Dr, Ste 100
Studio City, CA 91604
818- 487-7400
Email: abaum@udgmail.com

15. Sentenced on more than one count: No

16. Future sentence to serve: None

---

[2] [2] In the plea agreement, this check was erroneously identified as a check made out to Kimball Chase for $54,000 and dated 8/8/08. This is an obvious error because the plea agreement tied this in as a "fraudulent check" that was faxed from Kurt Sanborn to Andy Prolman on February 20, 2004.

Wherefore, Mr. Sanborn prays that the Court grant the following relief:

      A.  Vacate his conviction and sentence; or

      B.  Modify his sentence to "time served" and order his immediate relief; or

      C.  Schedule an immediate hearing;

      D.  And for any other relief to which he may be entitled.


                        Respectfully Submitted

                        /s/ Dawn E. Worsley
                        Dawn E. Worsley, Esq.
                        NH Bar ID 12833
                        Law Office of Dawn E. Worsley
                        29 E. Pearl St.
                        Nashua, NH 03060
                        (603) 546-0320


I declare under penalty of perjury that the foregoing is true and correct.


Executed on _____             /s/ Kurt Sanborn
            Date                        Kurt Sanborn

7